# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 17-4367** |
| | ) | |
| **v.** | ) | **Judge Susan Richard Nelson** |
| | ) | |
| **CITY OF CASS LAKE,** | ) | **Magistrate Judge Leo I. Brisbois** |
| **MINNESOTA** | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFF UNITED STATES' MEMORANDUM IN SUPPORT OF MOTION TO ENTER CONSENT DECREE

The United States asks this Court to approve its settlement with the City of Cass Lake. Cass Lake is a city of about 750 people with limited financial resources. The United States' complaint in this case alleges that the City is liable under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 *et seq.*, commonly known as CERCLA or Superfund, for costs at the St. Regis Paper Company Superfund Site ("Site") in Cass Lake, Minnesota. The proposed Consent Decree resolves the City's liability in exchange for a small payment based on the City's ability to pay and the City's commitment to cooperate with future work.

The United States lodged the proposed Consent Decree with this Court on September 22, 2017 to solicit public comments. Doc. # 2-1. The United States also published a notice of lodging in the Federal Register. *See* 82 Fed. Reg. 45,894 (Oct. 2,

2017). The only comments submitted came from International Paper Company. International Paper is a Fortune 150 company with annual revenues of more than $20 billion.[1]  International Paper is the primary responsible party at the Site (as successor to the party that operated the wood treatment facility). International Paper's comments are attached as Exhibit 1 and addressed in full below. After reviewing the comments, the United States has determined that nothing in the comments changes its conclusion that the Consent Decree is fair, reasonable, and consistent with CERCLA.

Therefore, the United States asks this Court to sign and enter the decree as final judgment in this action. The City supports this motion.

## BACKGROUND

**A.     Statutory Framework**

Congress enacted CERCLA in response to serious environmental problems posed by improper handling, treatment, and disposal of hazardous substances. *See e.g.*, *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 602 (2009); *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1039-40 (2d Cir. 1985). CERCLA "provides a mechanism for cleaning up hazardous waste sites, and imposes the costs of the cleanup on those responsible for the contamination." *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 7 (1989).

Under Section 107(a) of CERCLA, the federal government may file actions to recover, *inter alia*, all costs it incurs for removal or remediation of hazardous substances

---

[1] *See* http://fortune.com/fortune500/international-paper/

at a given site from potentially responsible parties. 42 U.S.C. § 9607(a)(1)-(4)(A). Liable parties under Section 107(a) include present site owners and operators, past site owners and operators at the time of disposal, and specified categories of generators and transporters of hazardous substances. 42 U.S.C. § 9607(a). In keeping with the broad cost recovery policy, under Section 107(a) responsible parties are strictly liable. *Burlington Northern*, 556 U.S. at 608 ("CERCLA imposes strict liability for environmental contamination upon four broad classes of PRPs").

In crafting CERCLA, Congress built in a "policy . . . to encourage settlements." *United States v. Cannons Eng'g Corp*., 899 F.2d 79, 84 (1st Cir. 1990). As the Third Circuit has explained, Section 122 "of CERCLA expressly provides that 'whenever practicable and in the public interest . . . [EPA] shall act to facilitate agreements . . . in order to expedite effective remedial actions and minimize litigation.'" *United States v. Occidental Chemical Corp.* 200 F.3d 143, 147 (3d Cir. 1999).

Congress explicitly envisioned settlements based on a responsible party's limited ability to pay. 42 U.S.C. § 9622(g)(7). The government is directed to "take into consideration the ability of the person to pay response costs and still maintain its basic business operations." *Id*. at § 9622(g)(7)(B). The statutory ability to pay settlement provision applies to *de minimis* parties, but EPA has applied the same principles to non-*de minimis* parties as well. *See id*. at § 9622(g)(6) (stating that nothing in the subsection affects the government's authority to reach settlements with other responsible parties).

3

Numerous courts have approved such settlements because they serve to reimburse the Superfund without imposing undue financial hardship on a settlor. *United States v. Bay Area Battery,* 895 F.Supp. 1524, 1529-30 (N.D. Fla. 1995); *see also United States v. Coeur d'Alenes Co.*, 767 F3d 873, 875 (9th Cir. 2014); *In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 119 (2d Cir. 1992); *United States* v. *Vertac Chem. Corp.,* 756 F. Supp. 1215, 1218-19 (E.D. Ark. 1991), *aff'd sub nom. United States* v. *Hercules, Inc.,* 961 F.2d 796 (8th Cir. 1992).

**B.     St. Regis Paper Company Superfund Site**

The Site consists of about 163 acres of land within Cass Lake. The City sits within the boundaries of the federally designated reservation of the Leech Lake Band of the Ojibwe Tribe. The Site is located in a mixed-use industrial, commercial, and residential area.

For four decades, Champion International Corp. operated a wood-treatment facility on the Site. Ex. 2, Declaration of Leslie Patterson ("Patterson Dec.") ¶7. Chemicals from wood treating entered the soil and groundwater through much of the Site. *Id*. Under supervision of first the Minnesota Pollution Control Agency and later EPA, responsible parties have conducted a series of studies and partial cleanup actions at the Site. *Id.* ¶9. EPA has not yet selected a final remedy for the Site. *Id.* ¶10. EPA anticipates selecting further remedial action(s) for the Site and then working with International Paper and BNSF to perform and fund the cleanup. *Id*.

In 2010, the United States brought an action against International Paper and two other responsible parties, the BNSF Railway Company and Cass Forest Products, Inc. That case (*United States v. International Paper Co.*, No. 10-cv-03749), concluded with Judge Montgomery entering two consent decrees on November 29, 2010. The decree with International Paper and BNSF resolved the United States' claims for past costs against those two defendants, while reserving claims for work at the Site and future costs. The Cass Forest Products settlement was based on that company's ability to pay and resolved all claims against it, subject to certain conditions, for a payment of $500.

**C.     The City of Cass Lake**

As described in further detail in the declaration of United States financial expert Gail Coad, the City is both extremely small and in precarious financial condition. *See generally* Ex. 3, Declaration of Gail Coad ("Coad Dec."). The current population is about 750, and has been decreasing. Coad Dec. ¶¶4, 22. Residents' per capita income is about half of the statewide average, while the unemployment rate is twice the statewide rate. *Id.* ¶5. The City has a small property tax base, in part because about 70% of the City's land does not pay property taxes (compared to about 10% in most other Minnesota cities). *Id.* ¶9. As a result, Cass Lake receives an unusually high amount of its overall revenue from state aid. *Id.* The City's population has declined steadily in recent years. *Id.* ¶8.

**D.     Proposed Consent Decree**

The Consent Decree would resolve the United States' claims against the City of Cass Lake in exchange for a one-time payment based on the City's limited ability to pay.

5

The United States hired financial expert Gail Coad to evaluate the City's finances. Because of the City's small size and financial difficulties, Ms. Coad concluded that its ability to pay was no more than $30,000. Coad Dec. ¶¶17, 25. The Consent Decree also requires the City to cooperate with EPA and any parties performing cleanup work at the Site and to assist with implementing any necessary land use restrictions. Doc. #2-1 ("CD") ¶¶9-12. In exchange, the City receives a covenant not to sue from the United States for CERCLA liability at the Site and protection from contribution claims made by other responsible parties. CD ¶¶29, 40.

The protections afforded the City in the Consent Decree are limited in two important ways. First, the United States' covenant not to sue is conditioned on the "veracity and completeness" of the financial and insurance information the City submitted to the United States. CD ¶¶29, 50. Second, the United States reserves its rights to bring actions if unknown conditions are discovered that indicate the remedial action at the Site will not be protective of human health or the environment. CD ¶¶30-32. The United States also reserves claims not specifically within its covenant not to sue, including claims for natural resource damages. CD ¶33.

## ARGUMENT

### I.     Standard Of Review

When evaluating a proposed consent decree in a CERCLA action, a court reviews for "fairness, reasonableness, and consistency with CERCLA." *United States v. Union Elec. Co.*, 132 F.3d 422, 430 (8th Cir. 1997); *see also United States v. Cannons Eng'g*

*Corp.*, 899 F.2d 79, 84, 86-90 (1st Cir. 1990). This determination is committed to the informed discretion of the trial court. *Union Electric*, 132 F.3d at 430; *United States v. Hercules*, 961 F.2d 796, 800 (8th Cir. 1992).

When reviewing settlements negotiated by the Department of Justice on behalf of EPA, courts exercise this discretion in a limited and deferential manner. Courts recognize both a strong "presumption in favor of voluntary settlements," *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1436 (6th Cir. 1991), and "EPA's inherent experience and expertise in handling such matters." *United States v. BP Amoco Oil*, 277 F. 3d 1012, 1019 (8th Cir. 2002). "The relevant standard … is not whether the settlement is one which the court itself might have fashioned, or considers as ideal, but whether the proposed decree is fair, reasonable, and faithful to the objectives of the governing statute." *Cannons Engineering*, 899 F.2d at 84; *see also United States v. Vertac Chem. Corp.*, 756 F. Supp. 1215, 1218-1219 (E.D. Ark. 1991), *aff'd, United States v. Hercules, Inc.*, 961 F. 2d 796 (8th Cir. 1992).

The policy encouraging settlements "has particular force where, as here, a government actor committed to the protection of the public interest has pulled the laboring oar in constructing the proposed settlement." *Cannons Engineering*, 899 F.2d at 84; *see also Akzo Coatings*, 949 F.2d at 1436 (rationale for deference is "particularly strong where a consent decree has been negotiated by the Department of Justice on behalf of a federal administrative agency like EPA which enjoys substantial expertise in the environmental field.").

II.    **The Consent Decree Should Be Entered Because It Is Fair, Reasonable, And Consistent With The Statute**

A.    **The Settlement Is Procedurally and Substantively Fair**

The fairness prong has two components: procedural fairness and substantive fairness. *B.P. Amoco Oil*, 277 F.3d at 1018; *Cannons Engineering*, 899 F.2d at 86. Both are satisfied here.

1.  **Procedural Fairness**

To evaluate procedural fairness, "[a] court should 'look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance.'" *B.P. Amoco Oil*, 277 F.3d at 1018; *In re Tutu Water Wells CERCLA Litigation*, 326 F.3d 201, 207 (3d Cir. 2003).

Here the Parties were represented by sophisticated outside counsel and negotiated a settlement over several years. Negotiations began in 2008 and lasted for about two years before going on hiatus without an agreement. Patterson Dec. ¶11. They resumed in 2015, resulting in the Decree. *Id*. at ¶12. During the second period of negotiations, the City and United States had numerous communications, including two in-person meetings in Chicago. *Id*. During both periods of negotiation, the City provided comprehensive financial information. Coad Dec. ¶3.

While not brought into the specific negotiations concerning the Decree, International Paper was aware that negotiations were proceeding and told in advance of lodging. Patterson Dec. ¶14. Nothing more is required. Contrary to the implication in its

comment, Ex. 1 ("Comment") at 1,[2] International Paper is not due a seat at the

negotiating table simply because it is the primary responsible party at the Site. *See United*

*States v. Brook Village Associates*, No. Civ.A. 05–195, 2006 WL 3227769, at \*5 (D. R.I.

Nov. 6, 2006) (court "finds no support" for that position). As the First Circuit has

explained, so "long as it operates in good faith, the EPA is at liberty to negotiate and

settle with whomever it chooses." *Cannons Engineering*, 899 F.2d at 93. Moreover,

International Paper took advantage of the opportunity to comment on the Consent

Decree. The company's views are being fully heard and considered; the procedural

fairness prong is satisfied.

### 2. Substantive Fairness

The starting point for the substantive fairness inquiry is usually the comparative

fault of the entities involved in the contamination. *See, e.g., B.P. Amoco Oil*, 277 F.3d at

1018-20; *Cannons Engineering,* 899 F.2d at 87-88. However, "EPA ... must also be

accorded flexibility to diverge from an apportionment formula in order to address special

factors not conducive to regimented treatment." *Id.* A defendant's limited ability to pay is

a quintessential "special factor" that both the government and the Court must take into

account. *Bay Area Battery,* 895 F. Supp at 1529. "Courts have routinely recognized the

---

[2] International Paper states that EPA failed to consider "a number of facts and issues" by
not including it in the negotiations. Comment at 1. However, the company does not
present any facts or issues not previously known and considered by EPA. Patterson Dec.
¶13.

important policy considerations served by so-called "ability to pay" settlements." *Cour d'Alenes*, 767 F.3d at 875.

Here the United States hired a financial expert to evaluate what the City could afford to pay. As described in more detail in her declaration, Ms. Coad examined the City's finances. Coad Dec. ¶¶6-16. She found that Cass Lake is extremely small, financially troubled, and unusually dependent on state aid. Coad Dec. ¶¶4-17. She concluded that the payment required by the Decree is reasonable. Coad Dec. ¶¶17, 25.

By requiring Cass Lake to pay what it can afford, the Decree is fair. Requiring the City to pay *more* would be neither fair nor reasonable. *See* Coad Dec. ¶19 ("it is my opinion that Cass Lake has no financial capability to pay more than what it committed to in the Consent Decree.").

### B.    The Settlement Is Reasonable

Courts generally consider three factors in determining whether a CERCLA settlement is reasonable: the technical adequacy of the work to be performed in cleaning the environment; whether the settlement satisfactorily compensates the public for response costs; and the risks and delays inherent in litigation. *Cannons Engineering*, 899 F.2d at 89-90; *Union Elec. Co.*, 934 F. Supp. 324, 331 (E.D. Mo. 1996). The first prong of the reasonableness inquiry is not at issue: the City will not perform the remedy but is simply reimbursing EPA a portion of its Site costs. The Decree satisfies the two other, intertwined reasonableness considerations.

Settlement is particularly reasonable where continued litigation would simply deplete the funds that the defendant could pay, ensuring nothing more than a Pyrrhic victory. *Bay Area Battery*, 895 F. Supp. at 1534 ("Though the Government could likely obtain a judgment against these parties, the costs of litigating and levying against the parties would likely outstrip the ultimate recovery. By settling with these PRPs now, the Government insures what little money the settlors have to contribute will be used to clean up the environment rather than pay attorneys."); *United States v. Vertac Chem. Corp.*, 756 F. Supp. 1215, 1219 (E.D. Ark. 1991) (approving CERCLA consent decree where "settlement represents a recovery of the maximum possible amount of money obtainable from [Settling Defendants] given their net worth and their limited ability to pay.") *aff'd sub nom United States v. Hercules, Inc.*, 961 F.2d 796, 800 (8th Cir. 1992). In addition, the United States will continue to pursue the rest of its costs from the remaining defendants, leaving open the possibility of a full recovery of its costs.

Moreover, if the Parties litigated to judgment, the Court could decide that, because of the equities, *no* payment should be required. In a recent contribution case against a larger city that owned a portion of a Superfund site in northern Wisconsin, the court found the city was liable, but that its equitable share of the costs was zero. *See Northern States Power Co. v. City of Ashland, Wis.*, 131 F.Supp.3d 802, 825 (W.D. Wis. 2015). While the facts of each case differ, the same result is possible here. Because the settlement amount represents the City's ability to pay, and litigating to recovery would likely only result in a smaller payment or no payment at all, the Decree is reasonable.

11

### C.     The Settlement Is Consistent with the Statute

The final consideration for this Court is whether the settlement is consistent with the statute. Naturally, a settlement that is fair and reasonable will generally also satisfy the statutory objectives. *Cannons Engineering*, 899 F.2d at 90-91. By resolving the City's liability for the amount it is able to pay, the Decree satisfies three CERLCA purposes: making responsible parties pay their share of site costs, accounting for parties' ability to pay, and minimizing litigation and transaction costs through settlements. *See Union Electric*, 934 F. Supp. at 331-32; *Bay Area Battery*, 895 F. Supp. at 1535; *Cannons Engineering*, 899 F.2d at 90; *United States v. Rohm & Haas*, 721 F. Supp. 666, 696 (D. N.J. 1989).

### III.   Nothing In The Comments Submitted By International Paper Suggests That Entry Is Inappropriate

The comments on the Decree came from responsible party International Paper. The United States has reviewed those comments and concluded that they do not present a reason not to enter the Decree, for the reasons described below. The United States financial analyst reviewed the arguments made by International Paper and her conclusion that the City lacks the ability to pay more than $30,000 remains the same. Coad Dec. ¶¶19, 26.

Notably, most of the arguments International Paper raises here would be equally applicable to *any* ability to pay settlement—including the prior consent decree with Cass Forest Products. That settlement was approved without objection. *See United States v. International Paper Co.*, No. 10-cv-03749, Doc. # 12.

12

### A.      The Scope of the Settlement Is Appropriate

The Comment argues that the dump area should be excluded from the Decree and/or that the Decree should not provide contribution protection to the City. Comment at 2. In essence, International Paper argues that the United States should only offer the City a partial settlement, one that allows further litigation.

This comment is simply at odds with the statute. The settlement collects what the City can afford to pay. Congress deliberately crafted the law so that parties settling their CERCLA liability with the United States would be protected from contribution claims from other responsible parties. 42 U.S.C. § 9613(f)(2); *Union Electric*, 132 F.3d at 430. Contribution protection "is reasonable and consistent with the underlying policies and goals of CERCLA because it prevents duplicate liability and encourages cooperation with the government, thereby serving the goals of efficient and effective environmental cleanup and regulation." *B.P. Amoco Oil*, 277 F.3d at 1021.

The logic of contribution protection is particularly strong in an ability to pay decree: "Since the premise of such a settlement is the settling PRPs are being asked to pay all they can afford, it makes sense to assume they cannot contribute more in the future." *Bay Area Battery*, 895 F. Supp. at 1530. Indeed, International Paper *admits* that its claims against the City, if allowed, "might only amount to a minimal recovery." Comment at 3. Such litigation for the sake of litigation is precisely what Congress sought to preclude. *B.P. Amoco Oil*, 277 F.3d at 1020.

Ultimately, International Paper's concern is that it may be asked to pay more than it believes to be its fair share at the Site. What burden the company will ultimately bear remains unknown. But if it does pay more than its share, that too is a policy choice Congress has made: "Disproportionate liability, a technique which promotes early settlements and deters litigation for litigation's sake, is an integral part of the statutory plan." *Cannons Engineering*, 899 F.2d at 91-92; *see also Cour d'Alenes*, 767 F.3d at 878.

### B.    The Financial Analysis Underlying the Decree Is Appropriate

International Paper contends that the Decree does not include sufficient information to judge whether the settlement amount is appropriate. Comment at 3.

As noted above, the settlement amount was the result of a thorough analysis by an experienced financial expert. Her declaration provides the details of the information she reviewed and the conclusions she reached. This type of analysis has provided the basis for numerous ability to pay consent decrees approved by the courts. *See Coeur d'Alenes*, 767 F.3d at 878; *Bay Area Battery*, 895 F. Supp at 1529-32; *Vertac Chem. Corp.*, 756 F. Supp. at 1219. Indeed, there is no obligation for the United States to disclose its formula for determining a settlement amount or air the details of the settlor's finances. *United States v. Davis*, 261 F.3d 1, 23-24 (1st Cir. 2001); *United States v. Hecla Ltd.*, 2011 WL 3962227, at *5 (D. Id. Sep. 8, 2011).

International Paper also complains that the Decree does not recite the City's total liability. Comment at 3. Calculating the City's liability would serve no purpose, however, because of its limited ability to pay. As the Ninth Circuit has explained, "CERCLA

expressly permits the government to take ability to pay into account when fashioning a settlement with a PRP." *Coeur d'Alenes*, 767 F.3d at 877. There is no need to calculate how much the City would have paid if it had the resources International Paper does. *See Coeur d'Alenes*, 767 F.3d at 878 ("no reason for the district court to spend its time quantifying precisely how disproportionately [objecting responsible party] may be held liable.").

Finally, International Paper suggests that certain City land holdings were not properly accounted for in the analysis. These properties have little financial value and would not affect the financial analysis of the City's ability to pay. *See* Coad Dec. ¶¶15, 20-21.

### C.    There Is No Basis to Require Additional, Future Payments

International Paper argues that it is possible that the City's finances will greatly improve, and the Decree should include a provision allowing for additional payments in that circumstance. Comment at 4.

As an initial matter, the potential avenues of future growth identified by International Paper are merely speculative and seem unlikely to dramatically change the City's fortunes. Coad Dec. ¶¶22-24. Moreover, every city, and indeed every business, has plans to improve its finances. No ability to pay settlements would be possible if such aspirations were charged against the settling parties.

The settlement reflects Cass Lake's ability to pay today. While there is always the potential for conditions to change in the future, the Parties and the Court must make do

with the information they have. As one court explained, "incomplete information,
muddled records, and rough approximations of responsibility are the norm [in] CERCLA
litigation . . . . Such difficulties, however, will not preclude a court from entering a
consent decree." *Brook Village,* 2006 WL 3227769, at *9; *see also Cannons*, 899 F.2d at
88 ("[I]t would disserve a principal end of the statute—achievement of prompt settlement
and a concomitant head start on response activities—to leave matters in limbo until more
precise information was amassed.").

CERCLA specifically allows ability to pay settlements and encourages agreements
rather than litigation. This policy choice for finality means that the City may one day
improve its finances without having to put the money into the Site. That possibility is no
reason to reject the Decree.

## CONCLUSION

The United States asks this Court to sign and enter the decree as final judgment in
this action. There is a signature line for the Court on page 30 of the Consent Decree.


Respectfully submitted,

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice


*s/Thomas A. Benson*
THOMAS A. BENSON
(Mass. Bar No. 660308)
Environmental Enforcement Section

16

Environment and Natural Resources Div.
U.S. Department of Justice
Washington, DC  20044-7611

OF COUNSEL

THOMAS TURNER
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 5
77 W. Jackson Blvd.
Chicago, IL 60604

GREGORY G. BROOKER
Acting United States Attorney
District of Minnesota

FRIEDRICH A. P. SIEKERT
Assistant United States Attorney
MN Attorney ID No. 0142013
District of Minnesota
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5600

17

## CERTIFICATE OF SERVICE

Pursuant to Paragraph 51 of the accompanying Consent Decree, I hereby certify that copies of the foregoing motion and all supporting materials were served on this date by email to the following individuals on behalf of the City of Cass Lake:

***Sue Uhrinak***
City Clerk-Treasurer
City of Cass Lake
P O Box 877
Cass Lake, MN 56633
casslake@midconetwork.com


***Sara Peterson***
Outside Counsel for City of Cass Lake
Parkway Law LLC
Minneapolis, MN
sara.peterson@parkwaylaw.com


In addition, a copy of the foregoing motion and all supporting materials was served on this date by email to counsel on behalf of commenter International Paper:

***Rick Rothman***
Outside Counsel for International Paper
Morgan Lewis
Los Angeles, CA
rick.rothman@morganlewis.com